Brian J. Wagner (TX 24077212)
**KUTAK ROCK LLP**
5 Park Plaza, Suite 1500
Irvine, CA 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394

Jeremy S. Williams (VA 77469)
Adolyn C. Wyatt (VA 97746)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

*Counsel to Eagle Eye Advance LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| In re: <br><br> EMPIRE COUNTERTOPS, LLC <br><br> Debtor. | Chapter 11 <br><br> Case No. 22-41686-BTR |
| EMPIRE COUNTERTOPS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., *et al.*, <br><br> Defendants. | Adv. Proc. No. 22-04066 |

## OBJECTION TO REQUEST FOR PRELIMINARY INJUNCTION

Eagle Eye Advance LLC ("Eagle Eye"), by counsel, objects to the relief requested in the *Complaint Seeking Turnover of Property Under 11 U.S.C. § 542 & Application for Injunctive Relief* [Docket No. 1] (the "Application") filed by the Debtor, Empire Countertops, LLC (the "Debtor") and in support thereof, states as follows:

4884-6281-3764.1

## BACKGROUND

1.  On March 24, 2022, the Debtor and Eagle Eye entered into that certain Standard Merchant Cash Advance Agreement (the "Agreement") pursuant to which the Debtor agreed to sell future account receivables, in the amount of $637,500, to Eagle Eye in exchange for immediate payment in the amount of $425,000. Curtis Mahoney ("Mr. Mahoney"), the principal for the Debtor, personally guaranteed the obligations of the Debtor in connection with the Agreement. A copy of the Agreement is attached hereto as **Exhibit A.**

2.  The obligations of the Debtor under the Agreement and pursuant to the terms of the Agreement, are secured by "(a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments and inventory. . ." and all proceeds derived therefrom. *See* Ex. A, pp. 7-8. Eagle Eye has properly perfected its lien pursuant to a UCC Financing Statement filed with the Texas Secretary of State as Filing Number 22-0021555244, a copy of which is attached hereto as **Exhibit B.**

3.  The Agreement also provided that Eagle Eye could automatically, on an agreed upon timetable, recover its property from the Debtor through ACH transfers from a designated bank account held by the Debtor with Chase Bank. On May 6, 2022, the Debtor, in violation of the Agreement, took measures to interfere with the recovery of Eagle Eye's property and to hinder the ACH transfers.

4.  In light of the Debtor's breach of the terms of the Agreement and on May 18, 2022, Eagle Eye filed a Verified Complaint [Index No. 514599/2022] (the "State Court Suit") in the Supreme Court of the State of New York, County of King (the "State Court"), seeking, among other things, damages against the Debtor and Mr. Mahoney as a result of the breach of the terms of the Agreement.

5. After initiating the State Court Suit, Eagle Eye was advised by Chase Bank that Mr. Mahoney caused a substantial amount of funds, in an amount no less than $100,000, to be dissipated from the Debtor's bank account, at least a portion of which appears to have been transferred to a personal joint account held by Mr. Mahoney and Mr. Mahoney's wife, Robin Mahoney, without due consideration. The Debtor does not appear to dispute that funds were transferred to and from his personal bank account, but alleges that such breaches of corporate formality were normal business operations. As such, on November 3, 2022, Eagle Eye filed a *Motion for a Temporary Restraining Order and Preliminary Injunction* (the "TRO Motion") in connection with the State Court Suit.

6. After reviewing the TRO Motion, accompanying exhibits, the Affirmation of Steven W. Wells, the Affidavit of John Quagan, and the Affidavit of Leo Vargas, the State Court entered an *Order to Show Cause With TRO* [State Court Suit; Docket No. 25] (the "TRO Order") pursuant to which the State Court issued an order: (i) enjoining the Debtor and Mr. Mahoney from transferring any funds held in the name of the Debtor or Mr. Mahoney away from Chase Bank; and (ii) requiring that both the Debtor and Mr. Mahoney appear before the State Court on December 22, 2022 regarding the potential issuance of a preliminary injunction restraining the transfer of all funds held in accounts in the name of the Debtor or Mr. Mahoney at Chase Bank or elsewhere. A copy of the TRO Order is attached hereto as **Exhibit C.**

7. On December 5, 2022, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") initiating the above-captioned proceeding in this Court (the "Bankruptcy Case").

8. No trustee or official committee of unsecured creditors has been appointed in these cases and the debtor is operating as a debtor-in-possession.

9.      On December 9, 2022, the Debtor filed its Application, which initiated this adversary proceeding and pursuant to which the Debtor requested a preliminary injunction until the adversary proceeding can be fully adjudicated.

10.     On December 12, 2022, the Court scheduled the Application for evidentiary hearing on December 15, 2022 [Docket No. 8].

11.     The Application requests a preliminary injunction forcing the turnover to the Debtor of all funds in the Chase accounts for its use in the Bankruptcy Case.

12.     The Debtor has requested this extraordinary relief on an emergency basis on only a few days' notice. To date and despite its prior request, Eagle Eye has only been provided with three months of bank statements ranging from September to November 2022.

**OBJECTION**

13.     Despite the Debtor's assertions, the only relevant fact in this case is that the funds in the Chase accounts are owned by Eagle Eye and are not subject to turnover. Furthermore, a preliminary injunction in this case, in the form requested, would be extremely prejudicial to Eagle Eye, would not maintain the status quo and would be contrary to the law given that the Debtor cannot meet the required elements to be entitled to such relief. In fact, turning over the funds to the Debtor for use in its Bankruptcy Case would improperly deplete Eagle Eye's assets before a final determination on the merits of this case could be made, in direct contravention of the intended purpose of temporary injunctive relief.

14.     The purpose of a preliminary injunction is to maintain the status quo, not to determine the ultimate rights of the parties. *Wheaton/TMW Fourth Ave., LP v. New York City Dept. of Bldgs*, 886 N.Y.S.2d 41, 42 (2009). A preliminary injunction is improper when it does not maintain the status quo but has the practical effect of granting the petitioner the ultimate relief

sought in the underlying proceeding. *See id.* Here, the Debtor's request for a preliminary injunction mirrors the primary relief requested in the underlying action. The Debtor is ultimately seeking turnover of the funds in the Chase account for immediate use, but would like to receive the funds before the Court determines that the Debtor is ultimately entitled to them. Allowing the premature disposition of the funds in the Chase accounts would not maintain the status quo between the parties but would grant the Debtor the ultimate relief that it seeks through the adversary proceeding. As such, even at this initial stage of analysis, injunctive relief is not appropriate.

15. Additionally, the Debtor cannot meet the elements required to receive a preliminary injunction. It is well settled that preliminary injunctive relief "is a drastic remedy [that] is not routinely granted." *Eastview Mall, LLC v. Grace Holmes, Inc.*, 122 N.Y.S.3d 848, 850 (2020). "A party seeking the drastic remedy of a preliminary injunction must establish a clear right to that relief under the law and the undisputed facts." *Wheaton/TMW,* 886 N.Y.S.2d at 42. A party seeking a preliminary injunction must establish three separate elements by clear and convincing elements: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor. *See RG & RH, Inc. v. Schmidt's Auto Body & Glass, Inc.*, 964 N.Y.S.2d 437, 438 (2013). *See also* McKinney's CPLR 6301, *et seq.*[1]

16. With respect to likelihood of success on the merits, the threshold inquiry is whether the proponent has tendered sufficient evidence demonstrating ultimate success in the underlying action. *1234 Broadway LLC v. W. Side SRO L. Project*, 924 N.Y.S.2d 35, 39–40

---

[1] The Agreement provides that New York law governs the Agreement and the relationship between Eagle Eye and the Debtor, without regard to any applicable principles of conflict of laws. Accordingly, New York law has been relied upon herein.

(2011). Conclusory statements lacking factual evidentiary detail warrant denial of a motion seeking a preliminary injunction." *Id.*

17. First, there is a fundamental fact in dispute precluding the Debtor from demonstrating its likelihood of success on the merits: ownership of the Chase funds. The Debtor alleges that the funds in the Chase account are property of the estate. However, Eagle Eye maintains, and the Agreement supports, that the transaction between the party was a sale of the accounts receivable, giving Eagle Eye ownership over the funds currently held in the Chase account.

18. The language of the Agreement unequivocally states that the underlying transaction was a sale and that ownership of the Debtor's post-execution receivables, up to $637,500, belongs to Eagle Eye. According to the Agreement, "each [of the Debtor's] Receivables, up to the balance of the Receivables Purchased Amount, are the property of [Eagle Eye] and not the property of [the Debtor]." Agreement, § 1. The Debtor agreed that "the Purchased Price under [the] Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan." Agreement, § 15. The Debtor also agreed that "[Eagle Eye] has purchased and **shall own all the Receivables**." *Id.* (emphasis added). The Debtor further agreed that and acknowledged that the "Receivables, up to the balance of the Receivables Purchased Amount, are the property of [Eagle Eye] and **not the property of [the Debtor]**." *Id.* (emphasis added). The Agreement relatedly provides that the receivables are to be held in trust for Eagle Eye. *Id.* Accordingly, Eagle Eye purchased and owns the receivables in the Chase accounts.

19. Further, courts have routinely found transactions similar to the Agreement constitute sales. *See K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 57 N.Y.S.3d 625, 632 (Sup. Ct.

West. Co. 2017) ("Many trial courts have examined similar agreements in the last several years, and have largely determined that most of them . . . [are the] purchases of receivables."); *Merchant Cash and Capital, LLC v. Yehowa Medical Services, Inc.*, 2016 WL 4478805 at *5 (Sup. Ct. Nassau Co. July 29, 2016); *Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC* 2012 WL 12284924 (Sup. Ct. Suff. Co. Nov. 28, 2012) ("Upon review of the record adduced on this motion, the court finds that Waryn failed to establish that the subject agreement to purchase credit card receivables was . . . not an agreement to purchase future receivables for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return.").

20. Based on the language of the Agreement, any contention that the Debtor now owns the receivables rather than Eagle Eye is unfounded. If the Debtor contends that there are funds in the Chase accounts that are not receivables owned by Eagle Eye, that simply cannot be. In its *Motion for Entry of Interim and Final Orders Authorizing Debtor's Use of Cash Collateral Pursuant to Bankruptcy Code Section 361, 362, and 363* [Docket No. 13] (the "<u>Cash Collateral Motion</u>"), the Debtor asserts that it has generated $137,000, on average, in accounts receivable per month for the past six months. This would total $822,000, which would exceed the amount owned by Eagle Eye. This amount would have been generated post-execution of the Agreement. As such, to the extent the Debtor takes any position other than the funds currently in the Chase account are post-execution receivables, such assertion would be contrary to prior representations to this Court. Notwithstanding the fact that the Debtor has generated receivables in an amount sufficient to pay Eagle Eye, Eagle Eye has not received the full amount that it bought under the Agreement because the Debtor has interfered with the agreed upon collection method shortly after entering into the Agreement and has used Eagle Eye's property over the past several months without

consent. Furthermore, given that the remaining balance in the Chase accounts does not currently exceed the amount owed to Eagle Eye, such funds must belong to Eagle Eye. Accordingly, the entirety of funds in the Chase accounts are owned by Eagle Eye and, therefore, the Debtor will not be successful on the merits of its case.

21. Regarding irreparable harm, an applicant for a preliminary injunction must show that it is *likely* to suffer irreparable harm if equitable relief is denied. *Trump v. Trump*, 128 N.Y.S.3d 801, 816 (N.Y. Sup. Ct. 2020). Thus, "the standard that movant must meet is extremely high." *Id.* (emphasis in original). The Debtor's statements in its Application are no different than what every bankruptcy debtor alleges. However, the Debtor has not set forth any efforts it has made to obtain debtor-in-possession financing or additional funds for a successful case. The Debtor is improperly putting the burden on Eagle Eye to fund the debtor's case using an asset owned by Eagle Eye.

22. Lastly, in considering whether the balance of equities tips in favor of the preliminary injunction, the courts must weigh the interests of the general public as well as the interests of the parties to the litigation. *Eastview Mall, LLC v. Grace Holmes, Inc.*, 122 N.Y.S.3d 848, 851 (2020). In balancing the equities, a court must inquire into whether "the irreparable injury to be sustained ... is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction." *Id.* (alterations in original). Granting the Debtor's requested preliminary injunction would cause substantial harm to Eagle Eye because it would allow the Debtor to permanently deplete an asset belonging to Eagle Eye. Once there was a final decision in the adversary proceeding, there is a high chance that there would be no asset remaining to adjudicate. Eagle Eye previously paid the Debtor for its purchase and ownership of the funds in the Chase accounts. If the Debtor is granted possession and power over the Chase accounts, Eagle

Eye's asset will be gone, unrecoverable, and the underlying case will become moot. Additionally, this will have a substantial effect on Eagle Eye's business.

23. In summary, the Debtor is asking this Court, on six days' notice, to force the turnover of in excess of $130,000 of Eagle Eye's property, to the Debtor. Such ruling would leave Eagle Eye with virtually no recovery. The Debtor, however, has other options for financing this case which present a much lower risk to Eagle Eye and which would allow for sufficient due process regarding ownership of the Chase funds. The Debtor, however, seemingly has chosen to pursue Eagle Eye's money instead. The balance of the equities in this case does not fall in the Debtor's favor. Instead, the funds should be kept frozen until a final determination on the merits can be made.

24. A preliminary injunction in this case would not maintain the status quo between the parties. It would grant the Debtor the ultimate relief it seeks in the underlying action and would cause substantial harm to Eagle Eye. Furthermore, the Debtor cannot meet the elements to be entitled to a preliminary injunction. As such, granting the Application for a preliminary injunction is inappropriate.

25. In the event that the Court deems that the Debtor should be entitled to a portion of the funds in the Chase account, Eagle Eye contends that this relief should be narrowly tailored. *See Bhd. of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co.,* 363 U.S. 528, 532 ("[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all . . . whose interests the injunction may affect.") (quoting *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (939)) (alterations in original). According to the Debtor's Cash Collateral Motion, it only needs $18,780.14 in the interim to fund operations. *See* Cash Collateral Motion, ¶ 11.

Accordingly, if any relief is granted to the Debtor, it should be limited to $18,780.14 rather than the entirety of the funds held in the Chase accounts.

26. While the Debtor's request for preliminary injunction is contained in the Application, Eagle Eye reserves all rights to respond and assert any and all affirmative defenses that it may be entitled to the underlying complaint contained therein. This Objection shall not be considered a waiver of any defenses Eagle Eye may have.

**WHEREFORE**, Eagle Eye requests that the Court deny the preliminary injunction contained in the Application and grant such other relief as it deems appropriate.

| | |
|---|---|
| Richmond, Virginia<br>Dated: December 14, 2022 | /s/ *Brian J. Wagner*<br>**KUTAK ROCK LLP**<br>Brian J. Wagner (TX No. 24077212)<br>5 Park Plaza, Suite 1500<br>Irvine, CA 92614-8595<br>Telephone: (949) 417-0999<br>Facsimile: (949) 417-5394<br>brian.wagner@kutakrock.com<br><br>and<br><br>**KUTAK ROCK LLP**<br>Jeremy S. Williams (VSB No. 77469)<br>Adolyn C. Wyatt (VSB No. 97746)<br>901 East Byrd Street, Suite 1000<br>Richmond, Virginia 23219<br>Telephone: (804) 644-1700<br>Facsimile: (804) 783-6192<br>jeremy.williams@kutakrock.com<br>adolyn.wyatt@kutakrock.com<br>*Counsel for Eagle Eye Advance LLC* |

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on December 14, 2022, a true and correct copy of the foregoing document was served on all necessary parties via the Court's CM/ECF.

/s/ *Brian J. Wagner*
      Counsel

4884-6281-3764.1